WILLIAM J. WALLIS, ELISHA N. BRUNE, and JOHN GLENN, *vs.* BARNEY DILLEY, BENJAMIN R. EDWARDS and JOSEPH DILLEY, use of JOSEPH DILLEY.

Upon a bill for an injunction the order directed the injunction to issue "*on the filing of a bond;*" the bond was filed, reciting that the obligors "*have obtained*" the injunction, and the writ issued all *on the same day.* HELD, that these must be regarded as simultaneous acts, and that the bond referred to the injunction *then* obtained.

It is well established, that in all matters arising *ex contractu,* the successful party is not entitled to recover the fees which he may have paid to his counsel.

In a suit upon an injunction bond, the recovery for *costs and expenses* is confined to those which accrued between the time of issuing the injunction and the affirmance of the order dissolving it.

The fact that one of the obligors in an injunction bond had taken the benefit of the insolvent laws, and his permanent trustee appointed, is no objection to his joining in his own name in a suit upon the bond.

Courts of common law will, in the exercise of a *quasi* equitable jurisdiction, order the proper use to be entered in the action, on motion of a *cestui que trust* or of a defendant.

Wallis, *et al., vs.* Dilley, *et al.*

In a suit upon a bond for the payment of *one sum* to three parties, all three must join as plaintiffs, though there be no *joint loss*, and if they do not, the omission may be availed of by demurrer to the declaration, or by proof of the non-joinder at the trial.

In a suit upon an injunction bond, given upon the granting of an injunction to restrain the payment of a certain sum of money to the obligors, interest on this sum is recoverable, as *matter of right,* up to the time it was paid into court upon the dissolution of the injunction.

APPEAL from the Superior Court of Baltimore city.

*Debt* upon an injunction bond by the appellees, the obligees, against the appellants, the obligors therein. The bond was for the penalty of $1500, and was dated the 14th of February 1846. It recited, that "whereas Powles, Hyde and Wallis, Brown and Owings, and J. A. Sangston and company, have obtained from Baltimore county court, sitting in chancery, a writ of injunction to prevent the Merchants Fire Insurance Company of Baltimore from paying over to said Barney Dilley, Benjamin R. Edwards and Joseph Dilley, or either of them, the sum of $3000, the amount of an insurance effected by them for said Edwards and Dilley, and renewed in the name of said Benjamin R. Edwards," and the condition was simply to "prosecute said writ with effect."

The declaration was upon the bond generally without assigning breaches. The defendants pleaded:—1st, general performance; 2nd, that the writ of injunction is not yet ended and determined, nor prosecuted to a final decree, but still is in the high court of chancery, and that they have obeyed all orders and decrees hitherto passed, and are ready to obey all such as may be passed by said court therein. To the first plea the plaintiffs replied, that the defendants have not prosecuted their writ of injunction with effect, concluding to the country, to which the similiter was entered. To the second plea they replied, by a general traverse, also concluding to the country, to which the similiter was likewise entered.

*Exception.* After the testimony on both sides (which is fully stated in the opinion of this court) had been offered, the plaintiffs asked an instruction, that if the jury find that the complainants mentioned in the bond did not prosecute their

writ of injunction therein mentioned to a successful termination, then they may find for the plaintiffs, in such damages as they shall appear from the evidence to have actually and necessarily sustained by reason of the granting of said writ; and if they find that the plaintiffs were damaged, by reason of said injunction, in the loss of interest upon the sum of $3000 mentioned in the bond, such interest so lost will form a proper item in the estimate of actual and necessary damages sustained, notwithstanding they may find that the insurance company agreed or proposed, in consideration of a release to them, to invest said $3000 without interest in full, deducting therefrom their costs and counsel fees, and that the plaintiffs declined to accede to the proposition, they not being bound to consent to any arrangement for an investment of less than the whole amount of the fund in controversy, unless with a reservation of their claim for the balance against the company or on the injunction bond.

The defendants then asked instructions, as follows:

1st. That there is no evidence to show that the parties named as complainants in the bond have failed to prosecute with effect the writ of injunction recited in it, and the plaintiffs consequently cannot recover.

2nd. That the plaintiffs are not entitled to recover upon the bond in suit, for any counsel fees, which they or any of them may have proven themselves to have paid for the defence of their interests in the equity proceedings offered in evidence.

3rd. That the defendants are not responsible to the plaintiffs in this suit for any costs or expenses of any sort, other than those incurred by them in said proceedings in equity, from the time of their institution down to the final action of the Court of Appeals on the injunction, and the reinstatement of the case in the court of chancery on the 2nd of July 1847, the subsequent proceedings being merely for relief, not wishing any further prosecution of the injunction and not covered by the bond sued on.

4th. That the plaintiffs are not entitled to recover in this case, it appearing from the evidence that prior to the institu-

tion of this suit the plaintiff, Edwards, had applied for the benefit of the insolvent laws, and Joseph Dilley had been appointed his permanent trustee, so that said Edwards, was improperly joined as plaintiff;—it further appearing that the name of said Edwards is not used as such plaintiff by his said trustee or for his use.

5th. That the plaintiffs are not entitled to recover in this action for any separate loss or damage sustained from the injunction proceedings by Joseph Dilley alone.

6th. That the plaintiffs are not entitled to recover, because they have offered no evidence of any joint damage or loss sustained by them from said injunction proceedings.

7th. That if the jury find that during the pendency of these equity proceedings the insurance company offered to the plaintiffs to invest the amount of the insurance policy therein referred to, to abide the determination of the controversy, and that the plaintiffs refused or declined to accede to such offer, then such offer and refusal are évidence proper to go to the jury, to be considered by them in determining the giving of interest by way of damages under the bond in suit.

The court, (FRICK, J.,) granted the plaintiffs' prayer, and rejected all of the defendants', and to this ruling the defendants excepted. The verdict and judgment were in favor of the plaintiffs for $1500 damages, and the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON J.

*F. K. Howard* and *S. T. Wallis,* for the appellants, argued.

1st. That the only writ of injunction proven in this case, is not such a writ as the appellants bound themselves by the bond given in evidence to prosecute with effect, and there is therefore no proof of the breach of said bond. The injunction was not issued until after the execution of the bond. The first prayer of the appellants was therefore improperly rejected. *Morgan vs. Blackiston,* 5 *H. & J.,* 61. *Morgan vs. Morgan,* 4 *G. & J.,* 401. *Lloyd vs. Burgess,* 4 *Gill,* 192.

The court will go to the full extent of the law in favor of sureties, 15 *Pet.*, 208, *United States vs. Boyd.*

2nd. That even if the appellants were responsible under that bond, for a failure to prosecute with effect the writ of injunction proven in these proceedings, the counsel fees of the appellees in the suit in equity, did not form a part of the damages for which the appellants became liable in consequence of such failure. The appellants' second prayer should therefore have been granted. *Sedgwick on Measure of Damages*, 97, 99 *to* 102. *Lincoln vs. Saratoga & Schenectady R. R. Co.*, 23 *Wend.*, 425. *Arcambel vs. Wiseman*, 3 *Dall.*, 306. *Barnard vs. Poor*, 21 *Pick.*, 382. 13 *How.*, 371, *Day vs. Woodworth.*

3rd. That an injunction bond is designed to cover the injury which the injunction may cause and nothing more. The appellants therefore, if responsible at all in this case, are not responsible for any costs or expenses other than those incurred in and about the injunction proceedings mentioned, from the time when said injunction was obtained, February 13th, 1846, until it was dissolved, July 2nd, 1847, and the cause reinstated in the chancery court. The court therefore erred in rejecting the appellants' third prayer, which affirmed this principle, and in granting the appellees' prayer which affirmed the contrary. *McCabe vs. Morehead*, 1 *Watts & Serg.*, 516. *Conrad vs. Pacific Ins. Co.*, 6 *Pet.*, 273, 276. *Karthaus vs. Owings*, 6 *H. & J.*, 138. *Walter vs. Warfield*, 2 *Gill*, 220.

4th. That Benjamin R. Edwards is improperly joined as a plaintiff in this suit, he having prior to its institution taken the benefit of the insolvent laws, and Joseph Dilley having been appointed his permanent trustee, and not using the name of said Edwards to his use, as such trustee, though the suit is for a substantive right of the insolvent created prior to his insolvency. This principle was overruled by the court, in rejecting the appellants' fourth prayer. *Act of* 1827, *ch.* 70.

5th. That the appellees, having sued jointly, are not entitled to recover, they having offered no proof of any joint loss

31        v.7

or damage, and not being entitled to recover in a joint action for any separate loss or damage sustained by any one of them. This point was presented by appellants' fifth and sixth prayers. 1 *Chitty on Pl.*, 10, 16. *Brown on Actions at Law*, 8, 116, 119, 122. *Slater vs. Magraw*, 12 *G. & J.*, 265. *Acts of* 1835, *ch.* 180, *sec.* 7; 1835, *ch.* 346, *sec.* 3, and 1835, *ch.* 380, *sec.* 7. 8 *Gill*, 456, *Lahy vs. Holland.* 6 *Wend.*, 629, *Ehle vs. Purdy.* 14 *Mees. & Wels.*, 572, *Bradburne vs. Botfield.* 2 *Leigh's Nisi Prius*, 736. 2 *Dana*, 460.

6th. It was proven by Mr. Lloyd, that the Insurance Company, at the outset of the litigation and during its pendency, offered to invest the fund at lawful interest for the benefit of whom it might concern, and that the appellees refused such offer. The appellants, by their seventh prayer, asked the court to leave this to the jury, as an item, (if they should find it to exist,) from which, with other proof, they might determine upon the right of the appellees to recover under the injunction bond, for interest lost. The court refused this prayer, and granted the appellees' prayer, thereby excluding such fact, even if found, from the consideration of the jury. In this we say the court erred: that the question of the right to interest was one for the jury under all the circumstances, and that it should have been left to them to determine, whether Dilley himself had not prevented the fund from earning interest, and thereby precluded himself, to that extent, from complaining of its loss. *Sedgwick on Measure of Damages*, 94, 95, 385, 386. 7 *H. & J.*, 453, *Newson vs. Douglass.*

*William F. Frick* for the appellees, argued in answer to the points of the appellants.

1st. That the injunction bond was executed, and the injunction writ issued, at the same time. It was recited in the former, that the writ had *been obtained*. This fact the defendants were estopped from denying. *Lloyd vs. Burgess*, 4 *Gill*, 192. *Hardy, vs. Coe, use of Brooke*, 5 *Gill*, 193. And the injunction writ and proceedings proved, are precisely such as the bond describes; and there were, in fact, none other. But

if to a recovery on the bond, the nature of the transaction required that the filing of the bond should precede the *issuing* of the writ, (and the acts were in fact of the same day, and cotemporaneous,) the recital in the bond will not be so construed as to avoid, but rather to give virtue and effect to, the bond. The legal intendment will then be :—1st. That the order for the writ was *obtained ;* the writ to be issued *on* the filing of the bond. 2nd. The filing of the bond. 3rd. The *issuing* of the writ. *Wood vs. Fulton*, 2 *H. & G.*, 71. *McMechen, vs. Mayor & City Council*, 2 *H. & J.*, 41.

2nd. The instruction asked was, that the plaintiffs should not recover *any* counsel fees, &c. The records in evidence show, that the litigation about this $3000 policy began in 1845, and did not end till 1851. There were three cases in chancery and three in this court, the judgments being *always* against the complainants. There was abundant proof, that the litigation on their part was vexatious and oppressive. This may not have been so intended, but the jury were entitled to determine that question. Though there is conflict of authority on the point, whether counsel fees form a proper item of damage in ordinary suits on replevin and injunction bonds and proceedings, for interference with rights of possession of real or personal property, there is none in cases where improper motives enter into the litigation, as where it is malicious or vexatious, as intended to force the other party into a compromise or settlement. If the jury had thought this such a case, it would have been error in the court to deprive them of the right to take into consideration, (if they had thought proper to do so,) any part of the reasonable and necessary expenses incurred by the appellees in the protection of their rights. *Jones vs. Doles*, 3 *Louisiana Ann. Rep.*, 588. *Marshall vs. Betner*, 17 *Ala. Rep.*, 837. *Whipple vs. Cumberland Manf. Co.*, 2 *Story's Rep.*, 665. *Boston Manf. Co., vs. Fiske*, 2 *Mason*, 120. *Allen vs. Blunt*, 2 *Woodbury & Minot*, 146, and cases referred to in this case, where "counsel fees" are always allowed in suits on "covenants of seisin ;" also 4 *Md. Ch. Dec.*, 128, *Estate of Rachel Colvin.*

3rd. The plaintiffs' prayer stated the measure of damage to be, what they had actually and necessarily sustained *by reason* of the granting of the injunction, and claimed the interest on the $3000, if the jury should find that it was lost *by reason* of the injunction, &c. Defendants' 3rd prayer denied the plaintiffs' right to recover *costs and expenses of any sort*, other than were incurred *down* to the final action of the Court of Appeals on the injunction. The bond was signed by some of the complainants, and by Mr. Glenn, as their surety. When the second injunction was here finally dissolved, the plaintiffs were still deprived of the money, by the notice from Mr. Glenn, on behalf of the complainants, to the Insurance Company, not to pay the money till the case was disposed of in chancery; by reason of which notice, the company filed their bill of interpleader, under which the plaintiffs lost all the interest on the $3000, and were subjected to further costs and expenses. This additional loss and expense was by reason of the granting of the injunction, and the conduct of the obligors in the injunction bond: and under this instruction no part of it could have been recovered. Besides the prayer is liable to the construction, that even for the time while the injunction was pending, no damage *of any sort*, other than the costs and expenses of the equity proceedings, could properly be estimated by the jury, by which ruling they would have been misled. *Swift vs. Barnes*, 16 *Pick.*, 196. *Suydam vs. Jenkins*, 3 *Sandford*, 614. *Howe vs. Handley*, 28 *Maine*, 251.

4th. That Edwards being insolvent, was improperly joined as a party plaintiff, his trustee being the proper party to join; to which it is answered: Dilley, Edwards and Dilley were joint obligees, but the proof shows, that Joseph Dilley was the only party damnified. He owned the policy, and paid the costs of the proceeding. Barnes Dilley and Edwards, had no beneficial interest in the bond: 1st, If Edward's interest had, in fact, passed to his trustee, still, (the bond being a *chose in action*,) the suit would properly be in the name of Edwards, and could not be otherwise, except under the act of

1829, ch. 51. *Browne on Actions at Law*, 105, 209. 2nd, But as Edwards had no beneficial interest in the bond, nothing passed to his trustee. 1 *Chitty's Pl.*, 917. 3rd. And in any event, the suit was properly brought in the name of Edwards. The party to whose use the suit is entered, is not the legal plaintiff. The use is entered only for his protection. The suit would not abate by his death, &c. See *act of* 1827, *ch.* 70, *sec.* 2.

5th. The suit was *necessarily* in the name of all the obligees. It is not the case of joint covenantees, to which the rule applies, that where the legal interest and cause of action is several, they should sever, even though the covenant in its terms be joint. But here, not only is the cause of action joint, and the *legal* interest joint, but it could not, in such a case, be otherwise. Where the obligation is for the payment of one sum to three parties, there can be no such thing as a *several* legal interest. All *must* join, though only one be equitably entitled to the sum. 1 *Chitty's Pl.*, 9, 10, 11, 12, and notes. *Hurlstone on Bonds*, 9 *Law Lib.*, 96. 7 *Bac. Abr.*, *Obligation D.*, *sec.* 3. *Armstrong vs. Robinson*, 5 *G. & J.*, 412. *Maddox vs. State*, 4 *H. & J.*, 539.

7th. The seventh prayer, if granted, would have permitted the jury to disallow the interest on the $3000, claimed as damage, on the ground, simply, that if at any time, pending the proceedings, the plaintiffs refused to assent to the offer of the Insurance Company to invest the fund, their remedy on the bond, for interest, was gone. The proof shows, that the company always refused to invest or allow the back interest, and always claimed to deduct their counsel fees from the fund. If the plaintiffs had assented to such an offer, clearly their claim against the company for any thing more than the sum invested, would have been released; and this the company exacted. And they were willing to assent, provided the obligors in the bond would agree, that it should not prejudice Dilley's right to recover against them the interest that should be lost. But on this point the counsel could not agree. The plaintiffs, on their part, did all that could reasonably be

required of them. They were anxious for an investment, saving their rights, if any, on the bond. The arrangement was defeated, for want of the assent of the defendants. How then, with this proof before the jury, could they fairly be required to visit the consequences of the prevented negotiation upon the plaintiffs?

LE GRAND, C. J., delivered the opinion of this court.

This suit was instituted to recover the sum of $1500, the amount which the appellants had bound themselves in a certain injunction bond to pay to the appellees, on failure of certain complainants to prosecute their injunction with effect.

The appellees, at the trial, gave in evidence an injunction bond and the records of two causes commenced in Baltimore county court, sitting in equity, in one of which Powles and others were complainants, and the Merchants Fire Insurance Company, and Benjamin R. Edwards and Barney Dilley, were defendants; and the other, in which Powles and others were complainants, and the Merchants Fire Insurance Company, Benjamin R. Edwards, Barney Dilley and Joseph Dilley, were defendants. Both of these cases were removed to the court of chancery and finally determined in the Court of Appeals, the one on February 13th, 1846, the other January 1851. The circumstances under which the injunction here involved was granted and dissolved, will be found in the report of the latter case, in 2 *Md. Ch. Dec.*, 119, and 9 *Gill*, 222.

The appellees also offered a transcript of a bill of interpleader, filed by the Merchants Fire Insurance Company *vs.* Powles, Hyde and others, in chancery, October 1850; and also proved, that Joseph Dilley did not receive the $3000 mentioned in the equity proceedings, and the subject of the injunction,. *until February 1st*, 1851, when he received that sum out of chancery, in the interpleader proceedings aforesaid; that said Joseph Dilley paid costs of defendants in Baltimore county court, court of chancery and Court of Appeals, in the cause instituted in February 1846, and also $750 counsel fees.

The appellants then proved by John J. Lloyd, that he was counsel for the Merchants Fire Insurance Company at the

time of the institution of these suits; that there were several negotiations between Mr. Frick, the counsel for Joseph Dilley, and witness, for the purpose of relieving the company from its position as stakeholder. Mr. Frick wished the company to pay over to Dilley—witness wished the company to deduct their expenses from the fund, and pay balance to counsel for complainants and defendants, to be invested. The counsel for the respective parties could not agree; proposals were made to invest the fund when the litigation was first begun, and more than once afterwards.

The chief difficulty in the negotiation, in September 1849, was $375 interest, one-half of which the company offered to pay. The company always denied their liability for interest, and claimed to be allowed for expenses and counsel fees out of the fund.

The counsel for Dilley, on four separate occasions, demanded payment from the company, but it it was always refused under the circumstances stated. The refusal to pay, in July 1847, was based on the pendency of the suit, and the fact that Mr. Glenn, counsel for complainant, had notified the company not to pay.

The appellees then proved by Mr. Frick, (subject to exception,) that no demand was made on the company for payment until the affirmance of the chancellor's order dismissing the first injunction, in February 1846. Witness then called and demanded payment of the policy, and while he was then in their office the company were served with the second injunction. Before this time there was no negotiation in reference to the payment or investment of the fund. During the four years succeeding the granting of the second injunction, there were several conversations between Mr. Lloyd and witness in regard to the matter. The company always, (except in their last proposition,) claimed to invest the fund without interest, and after deducting counsel fees and expenses. In 1850, Mr. Lloyd offered to invest the principal, and $187.50 interest, still deducting costs and counsel fees. No proposition for investment was made prior to the institution of the second injunction proceedings, and none before 1850, except of the

principal, less costs and counsel fees. A formal demand was made on the company, in July 1847, which they refused, on the ground that Mr. Glenn had notified them not to pay. Mr. Dilley received the $3000, *February 1st*, 1851, from the court of chancery, where it had been deposited by the company, in October 1850.

On this state of facts the appellees asked and obtained a single instruction to the jury. The appellants submitted seven propositions, all of which were refused.

The first prayer of the appellants is to the effect, that there is no evidence to show the complainants mentioned in the bond given in evidence had failed to prosecute with effect the injunction recited in said bond.

The bond recites, that the obligors "*have obtained from Baltimore county court, sitting in chancery, a writ of injunction,*" &c. The order of the judge directing the issue of the writ is in these words: "Mr. Bradford will issue injunction as prayed for in this bill, *on the complainants*, or some person or persons for them, giving bond, with security to be approved by you, in a penalty of fifteen hundred dollars; said bond to be with the usual condition."

The theory of the prayer is, that inasmuch as the order directing the issue of the injunction requires it to be issued *on* the filing of the bond, and the bond recites that the obligors "*have*" obtained the injunction, the bond does not refer to the particular injunction which was not prosecuted with effect, but must be taken as referring to some other writ. We think the court below did right in rejecting this prayer. The record shows that the bill was filed, the bond given, and the injunction issued *on the same day*, the 14th February 1846, and we therefore regard these acts as simultaneous. It would be a mere burlesque of justice to intend the bond sued on had reference to any other writ of injunction than the one which the appellants failed to prosecute with effect. And although there has been considerable strictness in the interpretation placed upon injunction bonds, yet we see nothing in the decisions of our State to warrant the proposition contained in the prayer.

In the case of *Morgan vs. Blackiston, 5 Har. & Johns.*, 61,

it was but decided, that an injunction bond is only binding with reference to the judgment *recited*, and is security for the payment of no other judgment. In that case, the judgment recited in the bond was stated to have been rendered at September term 1801. The case was heard on a *case stated*, by which it appeared the parties had agreed that a judgment had been rendered at *April* term 1801. It was clear, on this state of facts, that the bond was not given in reference to the judgment set out in the statement of facts *agreed upon by the parties*. Had the plaintiffs in that case relied upon the bond and not on the statement of facts, the defendants would have been precluded from denying the existence of the judgment recited in it. *Hardey, et al., vs. Coe, 5 Gill*, 189. In *Morgan vs. Morgan, 4 Gill & Johns.*, 401, the court held, that it was no breach of a bond conditioned for the prosecution of a writ of injunction with effect in the court of *chancery*, that it was not so prosecuted on the equity side of St. Mary's county court. Neither of these cases are similar to the one now before us. Here, it is apparent, the bond was filed at the time of the issue of the writ, and although the bond, in its reference to the writ, speaks in the preterit tense, we interpret it in the present, regarding the filing of the bond and the issue of the writ as concurrent acts.

We are of the opinion that the second prayer of the appellants ought to have been granted. Whatever may be the justice of the rule, it seems to be well established, that in all matters arising *ex contractu*, the successful party is not entitled to recover the fees which he may have paid to his counsel. *Day vs. Woodworth, et al.*, 13 *Howard*, 363.

We do not concur in the ruling of the court in regard to the third prayer of the appellants. It confines the recovery of the plaintiff, so far as *costs* and *expenses* are concerned, to those which accrued between the time of the issuing of the injunction and the affirmance by the Court of Appeals of the order of the chancellor dissolving it. The prayer submits no question in regard to interest on the sum tied up in the hands of the insurance company, and we think in limiting the recovery, so far as *costs* and expenses are involved, to the time when the

32      v. 7

injunction was dissolved, was allowing all in *these respects* that was covered by the bond. The obligors only bound themselves to "prosecute with effect" the writ of injunction, or be responsible for the injury which would result from a failure to do so. When the injunction was dissolved, all injury for which they made themselves liable had then accrued. The prayer does not, as was insisted, *confine* the recovery of the plaintiffs to the costs and expenses stated in it, but merely the recovery, in *that regard,* to them.

The fourth prayer of defendants was properly refused. Apart from all other considerations, the prayer is fully answered by the decision of this court, in the case of the *State, use of the Justices of the Levy Court, vs. Dorsey, et al.*, 3 *Gill & Johnson,* 75. In the exercise of a *quasi* equitable jurisdiction, courts of common law, on motion of a *cestui que trust,* or of a defendant, will order the proper use to be entered in the action. *Green vs. Johnson,* 3 *Gill & Johnson,* 393.

The fifth and sixth prayers present substantially the same inquiry; the first denies the right of the plaintiffs to recover for any separate loss which may have been sustained by any one of them, and the other asserts there is no proof of a joint loss. It must be observed, that the cause of action here is joint, and that if all the plaintiffs had not united, the declaration would have been subject to demurrer. The obligation is for the payment of one sum to three parties, and they were properly joined as plaintiffs. Had they not been, the defendants might even have availed themselves of the non-joinder upon proof at the trial. *Armstrong vs. Robinson,* 5 *Gill & Johnson,* 413. We concur with the court below in their rejection of these prayers. We are also of the same opinion as the Superior Court in regard to the seventh prayer. It is not sustained by the proof. The insurance company did not agree to deposite the amount due under the policy, but only the sum remaining after deducting the costs and expenses to which it had been subjected. The plaintiffs were not bound to accede to any such proposition.

We concur in the general correctness of the prayer offered on behalf of the plaintiffs. It is, however, defective in one

particular, to wit, it does not define up to what time the interest on the $3000 was to be calculated. We think the time up to which interest ought to have been computed, was the day on which the amount was paid into court. This not being specified in the prayer, it was calculated to mislead the jury, and for that reason ought not to have been granted. We are of opinion, however, that in this case interest was recoverable as *matter of right.* *Newson's Adm'r vs. Douglass, 7 Harr. & Johns.,* 417.

*Judgment reversed and procedendo awarded.*