(Decided June 22nd, 1858.)

---

## Wm. E. Shriner *vs.* Lewis Lamborn, use of Joshua Smith.

An action was brought on a single bill in the name of the obligee, as *legal plaintiff,* for *the use* of his *assignee,* as the equitable plaintiff. The declaration was in the usual form of *debt,* the obligee being named therein as plaintiff. The obligor, the defendant, pleaded *payment* "to the said *plaintiff,*" and on this plea *issue was joined.* HELD:

That the defendant could offer, in support of *this issue,* a receipt showing that he *had paid* the bond to *the obligee,* though such payment was made *after,* and with full *notice* of, the *assignment;* the *cestui que use,* instead of *taking issue* on the plea, should have moved to strike it out, or replied specially the assignment and notice.

Where a party takes issue, in fact, upon an allegation not constituting a legal bar to his action, he cannot successfully ask the court to rule out testimony, if it be in proof of such allegation.

A court of law will recognize the rights of equitable assignees of *choses in action,* and protect the rights of *cestuis que trust,* but it is done in the exercise of a *quasi* equitable jurisdiction, where an appeal is made to the justice and discretion of the court, by way of motion, the matter whereof cannot be insisted on as a legal right, or presented in the form of a plea.

The rights of the equitable plaintiff, or person beneficially entitled, will be recognized and protected, but they must be brought to the consideration of the court in some regular form, so that they may be put in issue, and examined and passed upon by the court or the jury.

Payment by the obligor to the obligee, after notice of a *bona fide* assignment of the bond by the latter, will not operate to discharge the debt

A blank endorsement of a single bill by the obligee, may be filled up by the assignee with the full assignment at the trial.

Appeal from the Circuit Court for Carroll county.

This was an action brought in the name of Lewis Lamborn, as the *legal plaintiff*, for the *use of* Joshua Smith, against the appellant, upon a single bill for $200, executed by the latter, and payable to said Lamborn. The declaration was in the usual form in debt, the name of Lamborn appearing as plaintiff therein, and *the use* was entered upon the writ at the time the suit was commenced. The defendant *pleaded payment* "to *the said plaintiff*" on the 8th of May 1854, and upon *this plea* issue was joined.

In the course of the trial one exception was taken by the defendant to the ruling of the court below, (Nelson, J.,) which, with all the facts of the case, is fully stated in the opinion of this court, and the verdict and judgment being against him, the defendant appealed.

The cause was argued before Eccleston, Tuck and Bartol, J.

*Joseph M. Palmer* for the appellant:

Under the *pleadings* in this case, it was clearly competent for the defendant to prove *payment* of the single bill sued on to the *legal plaintiff* in the action, by the receipt dated the 8th of May 1854. The defendant pleaded *payment* to the *legal plaintiff*, and on this *plea alone issue* was joined. The only question, therefore, submitted to the jury, was *payment vel non* to the *legal plaintiff*. No issue of fact was made *by the pleadings* as to the *bona fides* of the assignment of the single bill to Smith, for whose *use* the action was brought. If the plaintiff, Smith, had been disposed to have tied the

fact of the assignment for value, and notice to the defendant, he should had *replied* those facts to the defendant's *plea of payment*, so as to have enabled the defendant to take issue, either of law or fact, upon such replication, but he did not do so, but joined issue on the plea of payment to the *legal plaintiff*, and it would be a *legal anomaly* to refuse to permit the defendant to *prove* the *plea* upon which the *issue* was joined. At common law, a bond or single bill was not assignable, so as to enable the assignee to sue in his own name, but the assignee held such assigned instrument as an equitable trustee, with power to collect the money, in the name of the assignor, for his use, and, by the modern decisions, the equitable assignee will, *upon proper pleadings*, be protected by *courts of law* against the fraudulent payment of the claim by the debtor to the assignor, *after notice*. If the plaintiff, Smith, had filed a proper replication to the defendant's plea of payment, the case would have presented quite a different question, but as it is, *under the pleadings*, the evidence was clearly admissible, and the court below erred in ruling otherwise. These principles and views are fully sustained by all the authorities. 7 *Term Rep.*, 663, *Bauerman vs. Radenius. Ibid.*, 670, *Craib & Wife, vs. D'Aeth, (note.)* 1 *Bos. & Pull.*, 446, *Legh vs. Legh.* 1 *Johns. Cases,* 411, *Andrews vs. Beecker.* 3 *Johns.*, 425, *Littlefield vs. Story.* 1 *Johns.*, 531, *(note.)* 11 *Johns.*, 53, *(note.)* 19 *Johns.*, 95, *Briggs vs. Dorr. Chitty on Bills,* 6 to 8. *Bac. Abr. Title Assignment (A.)* What would have been the facts of the case under proper pleadings, is not for this court now to enquire. The act of 1829, ch. 51, is not applicable, as this action is brought in the name of the assignor.

*Wm. P. Maulsby* for the appellee:

Upon all the facts set out in the record, the admission of this receipt to prove payment, would operate a fraud on the party for *whose use* the suit is brought. The assignment *in blank* was filled up by Smith, as he had a right, to do, (3 *Gill*, 251, *Chesley vs. Taylor,*) and of this assignment the defendant had *notice* before the payment was made to Lamborn. The receipt offered in evidence shows that the single bill was in possession

of Smith at that time, and the legal plaintiff promised to take it up by a given date, and deliver it to the defendant. In effect it is an agreement, between legal plaintiff and defendant, that the former will redeem the bill from Smith and deliver it up to the defendant. To admit the evidence, would be to permit a *bona fide* assignee of a *chose in action* to be defrauded by parties cognizant of his equitable rights, by collusion between themselves. To prevent such a result, and all other *fraud* and *injustice* upon them, *courts of common law* will protect the rights of *cestui que trusts.* 3 *G. & J.*, 393, *Green vs. Johnson, et al.* 5 *G. & J.*, 145, *Owings & Piet, vs. Low.* 7 *Md. Rep.*, 250, *Wallis, et al., vs. Dilley, et al.* According to Maryland law and practice, there is no other way of presenting such a question as this to the court trying the case, save by *excepting to the testimony.* In such cases the *cestui que use* is regarded as the *real plaintiff,* (8 *Md. Rep.*, 287, *Ing, et al., vs. State, use of Lewis, et al.,)* and the *plea of payment* means payment *to him.*

BARTOL, J., delivered the opinion of this court.

This suit was instituted on the 30th day of August 1856, to recover the amount of a single bill dated the 10th day of May 1853, whereby the appellant promised to pay, on or before the 10th day of May 1855, to Dr. Lewis Lamborn, two hundred dollars, with interest from date. On the back of said single bill was the following assignment:

"For value received, I assign and transfer the within single bill to Joshua Smith.                    L. LAMBORN."

The declaration is, in debt, in the usual form, Lamborn being named therein as plaintiff. The use was entered at the institution of the suit. The defendant pleaded *payment,* and issue was joined.

The bill of exceptions states "that it was admitted (at the trial) that the signature of L. Lamborn, on the back of said single bill, under the assignment thereon written, which assignment over the name of said Lamborn, on the back of said single bill, was filled up by the plaintiff, Smith, at the trial of the cause, is the signature of said Lewis Lamborn, the payee

of said single bill, and was endorsed thereon prior to the 8th day of May 1854, and was so signed on the back and delivered by said Lamborn to the said Smith, for whose use this case is entered, at the time of said endorsement, and that the defendant, Shriner, had notice of such endorsement and delivery by said Lamborn, prior to the said 8th day of May 1854; upon which the plaintiff, Smith, rested his case. The defendant then, to sustain the issue on his part, offered in evidence the following receipt, it being admitted that it was executed by Lewis Lamborn, the plaintiff above named, according to its purport, as follows:

"Received, May the 8th, 1854, of W. E. Shriner, payment in full of notes given to me by W. E. Shriner, dated the 10th day of May 1853, as follows: One of two hundred, due May 10th, 1855; one of two hundred, due May 10th, 1856; one hundred and fifty, due May 10th, 1858; and one of fifty dollars, due conditionally May 10th, 1858. These notes now in the hands of Joshua Smith, and which I promise to take up and return to W. E. Shriner, on or before the first of July next.                                   L. LAMBORN.

"Which evidence was offered to the jury by the defendant's counsel, to sustain the plea of payment; to the offering of which evidence, for such purpose, the plaintiff, Smith, by his counsel, objected, which objection the court sustained, and the defendant excepted."

The right of the plaintiff to fill up the blank with a full assignment, is established by the decision of the Court of Appeals, in *Chesley vs. Taylor*, 3 *Gill*, 251.

The single question presented for the consideration of this court is, whether the evidence offered was admissible, under the pleadings in the cause, for the purpose of proving payment?

In the determination of this question, it must not be forgotten that we are dealing with a case at law. So far as the pleadings disclose, the *plaintiff* is *Lewis Lamborn*. The plea in bar alleges in terms *"payment to the said plaintiff,"* and on this plea issue is joined. The proof offered tended to show a payment to the plaintiff, and ought to have been admitted by

the court; it was precisely in conformity with the plea.  The Court of Appeals have said, in the case of *Mitchell, Admr., vs. Williamson*, 9 *Gill,* 77, "When a party takes issue in fact upon an allegation not constituting a legal bar to his action, he cannot successfully ask the court to rule out testimony, if it be in proof of such allegation." That principle was announced with reference to a plea in which the court say they did not perceive that the matter therein alleged proved any legal defence, or a bar to the action. And that ruling of the court, which is in conformity with the well established principles of pleading, is an authority decisive of the case before us.

There is no doubt of the soundness of many of the positions assumed by the appellee's counsel, in the argument of this cause.  That a court of law will recognize the rights of equitable assignees of *choses in action*, and protect the rights of *cestuis que trust*, has been repeatedly asserted; but as the Court of Appeals say, in 3 *G. & J.,* 393, "It is done in the exercise of a *quasi* equitable jurisdiction, where an appeal is made to the justice and discretion of the court, by way of motion, the matter whereof cannot be insisted on as a legal right, or presented in the form of a plea."

The same doctrine is reasserted in 5 *G. & J.,* 145, and 7 *Md. Rep.,* 250.  These cases have been cited and relied upon by the appellee's counsel; but the error into which he has fallen, is in claiming the application of the principle to a case where no proceedings have been taken on the record to invoke the equitable interposition of the court on behalf of the *cestui que use*, and where the state of the pleadings is such as to confine the attention of the court and limit its powers, as a court of law, to the adjudication of the rights of the legal parties on the record.  To sanction the authority claimed in this case, for the court to overlook the issue presented on the record, and to reject evidence strictly pertinent to that issue—because to admit the evidence may impair the equitable rights of the *cestui que use*—would be to break through the established limits which separate the jurisdiction of courts of law from that of courts of equity.  See *Bauerman vs. Radenius*, 7 *Term Rep.,* 663. *Craib & Wife, vs. D' Aeth, Ibid.,* 670, *(note.)*

The rights of the equitable plaintiff, or person beneficially

entitled, will be recognized and protected; but they must be brought to the consideration of the court in some regular form, so that they may be put in issue, and examined and passed upon by the court or the jury. In suits on bonds with collateral condition, given in the name of the State, and sued on by a party interested, this is accomplished by "the party for whose use the suit is instituted, assigning proper breaches of the bond on the record, and then, on proof being offered, he may recover the amount of damages he has sustained by the breach." In such a case, this court has said, the party suing is regarded as the *real* plaintiff, although the State, technically speaking, is so. 8 *Md. Rep.*, 295. But the case before us is not analagous to that. Here the party for whose use the suit is brought, is not made, by the pleadings, a party in the record, so that the court may recognize and pass upon his equitable rights.

It is clear that if the assignment was *bona fide*, and passed to Smith the right to the single bill sued on, no payment by the obligor to the obligee, after notice of such assignment, would operate to discharge the debt. But in such case the proper course for the plaintiff, instead of taking issue on the plea, would be either to move the court to set aside the plea, or to reply specially the assignment and notice. Either of those modes of proceeding will put in issue the right of the party claiming to be beneficially entitled, and afford to the defendant an opportunity of trying the question of the *bona fide* character of the assignment. In the case of *Legh vs. Legh*, 1 *Bos. & Pull.*, 446, which was a case similar to this, the court, on motion, set aside the plea. Or, as we have said, the plaintiff may reply specially, setting out the assignment and notice. This is the more usual course, and many precedents may be found for such a proceeding. Among them we refer to *Andrews vs. Beecker*, 1 *Johns. Cases*, 411, and the authorities there cited in *note (a.)* See, also, *Briggs vs. Dorr*, 19 *Johns.*, 95. *Littlefield vs. Story*, 3 *Johns.*, 425. Such a replication puts in issue the facts upon which the rights of the assignee depend, and enables the court to recognize and protect them.

*Judgment reversed and procedendo ordered.*

(Decided June 24th, 1858.)